**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RONALD FULLER-WOODSON,      )
                                  )
         Plaintiff,         )      Civil Action No. 2:24-cv-353
                                  )      Magistrate Judge Maureen P. Kelly
         v.            )
                                  )      Re: ECF Nos. 43, 58
UNIT MANAGER SPIKER; *and*      )
UNIT MANAGER GUYTON,         )
                                  )
         Defendants.     )

## <u>MEMORANDUM OPINION</u>

For the following reasons, the Motion for Summary Judgment filed by Plaintiff Ronald Fuller-Woodson ("Fuller-Woodson"), ECF No. 43, is denied, and the Motion for Summary Judgment filed by Defendants Unit Manager Spiker and Unit Manager Guyton, ECF No. 58, is denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Fuller-Woodson brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 to recover damages for the alleged violation of his First and Eighth Amendment rights during his incarceration at the State Correctional Institution at Greene ("SCI-Greene"). ECF No. 6.

In his Complaint, Fuller-Woodson alleges under penalty of perjury the following claims. First, while housed in SCI-Greene's Delta Unit, Fuller-Woodson twice reported incidents of sexual abuse and harassment by his cellmate to Unit Manager Guyton ("Guyton"). Id. at 5, 12, 15. Despite his reports, Guyton failed to move Fuller-Woodson to another cell. As a result, Fuller-Woodson alleges he suffered a third instance of sexual abuse on February 6, 2024. Id. at 5, 12. Fuller-Woodson separately reported the incidents to Pennsylvania's PREA Coordinator.[1] As a result of

---

[1] PREA refers to the Prison Rape Elimination Act, 34 U.S.C. § 30301.

his PREA reports, Fuller-Woodson was moved to SCI – Greene's Bravo Unit, where Unit Manager Spiker allegedly retaliated against him by housing him with a cellmate with whom Fuller-Woodson had a prior dispute that resulted in a misconduct. Spiker also refused to honor cell housing agreements Fuller-Woodson reached with alternative cellmates. Fuller-Woodson alleges that Spiker housed him with an individual Fuller-Woodson reported made him feel unsafe, also in retaliation for his complaints and grievances. Id. at 13. Spiker ignored his concerns and thus failed to protect him from a violent sexual assault by his assigned cellmate that occurred on February 20, 2024. Id. In addition to suffering sexual assault, Fuller-Woodson alleges that his cellmate ripped his dreadlocks from his scalp. Id. at 14. After returning from an evaluation at an outside hospital, Spiker further retaliated against him again by loudly announcing that he accused his cellmate of sexual assault. Id. at 15.

In support of his Complaint, Spiker filed exhibits that include grievances that relate to his various claims; a misconduct and adjudication related to his initial cell assignment; and an inmate witness statement provided under penalty of perjury. ECF Nos. 6, 9, 12.

Defendants filed their Answer to the Complaint and denied Fuller-Woodson's allegations. ECF No. 22. After the completion of discovery, Fuller-Woodson filed Pretrial Statements to identify witnesses and exhibits in support of his claims, and a Declaration related to his inability to exhaust administrative remedies because of Spiker's alleged threats and ongoing retaliation. ECF Nos. 31, 32, 38. Fuller-Woodson also filed a Motion for Summary Judgment with exhibits and a Brief in Support of his Motion. ECF Nos. 43, 44. Defendants filed their Response to Fuller-Woodson's Motion for Summary Judgment and a Response to his Statement of Facts. ECF Nos. 54, 55.

Defendants filed their Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and an Appendix of exhibits. ECF Nos. 58-61. On March 11, 2024, the Court ordered Fuller-Woodson to respond to the Motion for Summary Judgment by April 14, 2025. Fuller-Woodson failed to file a response and on May 1, 2025, the Court issued an Order to Show Cause directing Fuller-Woodson to show cause why this action should not be dismissed due to his failure to prosecute this action by filing a response. To date, Fuller-Woodson has not filed a response to the Defendants' Motion for Summary Judgment nor responded to the Court's Order to Show Cause.

## II.    STANDARD OF REVIEW

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). Further, "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" Clews v. Cnty. of Schuylkill, 12 F.4th 353, 358 (3d Cir. 2021) (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating to the court that the undisputed evidence is insufficient to support one or more essential elements of the non-moving party's

claim. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted). In making this assessment, the court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Mil. & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

Finally, where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 402 (3d Cir. 2016).

### III.    DISCUSSION

#### A.    Fuller-Woodson's Motion for Summary Judgment

##### 1.    Failure to Protect

To state an Eighth Amendment claim for failure to protect, a plaintiff must sufficiently allege that prison officials were deliberately indifferent to his health or safety. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Fuller-Woodson asserts under penalty of perjury that he "reported to the Unit Manager Guyton that [he] had been sexually and physically assaulted by [his] inmate by PREA Grievance, meeting in the office with Unit Manager Guyton." ECF No. 43 at 2. He states that despite making this report, Guyton did not remove him from his cell and Fuller-Woodson "subsequently was sexually assaulted again." Id. In response, Guyton declares, also under penalty of perjury, that Fuller-Woodson "never reported to me that he had been subjected to sexual harassment or sexual assault by another other inmate, including by his cellmate." ECF No. 55-1. Guyton also states that he did not see any written statements from Fuller-Woodson concerning an alleged assault before February 8, 2024, when he arranged for Fuller-Woodson's transfer to another cellblock. Id.

This evidence is enough to raise a material issue of fact that requires a determination of witness credibility. Such determinations, like the weighing of the evidence and the drawing of legitimate inferences from the facts, are jury functions that are not amenable to resolution at the summary judgment stage. Anderson, 477 U.S. at 255.

Fuller-Woodson's failure to protect claims against Spiker present similar disputed issues of material fact that require jury resolution. In his Declaration, Fuller-Woodson asserts that upon his transfer from Delta Block on February 8, 2024, Spiker initially housed him with an inmate he refused to house with three months earlier. ECF No. 43 at 3. Fuller-Woodson avers that rather than honor a placement agreement Fuller-Woodson reached with a potential cellmate, Spiker chose a different cellmate. Fuller-Woodson asserts that he told Spiker this third cellmate made him feel unsafe and vulnerable to attack. Id. at 3-4. Spiker ignored his concerns and on February 20, 2024, the cellmate allegedly sexually assaulted Fuller-Woodson and pulled his hair out. Id.

In response, Spiker denies each of Fuller-Woodson's allegations and contends that there are material disputes of fact that preclude summary judgment in his favor. ECF No. 54 at 8-10. In his Declaration submitted under penalty of perjury, Spiker states that he was assured by Fuller-Woodson's initial cellmate that he had no issues with Fuller-Woodson. Based on their similar backgrounds and the cellmate's lack of a history of assault or sexual assault, Spiker determined that the risk of harm to Fuller-Woodson "would be low." ECF No. 55-2 at 5. Fuller-Woodson continued to request reassignment. Spiker told Fuller-Woodson to "find a compatible cellmate and complete a cell agreement" or chose one of three open beds with cellmates. Id. at 6. Fuller-Woodson presented him with a cell agreement. Spiker denied the Fuller-Woodson's request because of potential risk factors for sexual assault including the prospective cellmate's age and much larger size and muscularity. Id. at 6-7.

On February 16, 2024, Spiker assigned Fuller-Woodson to a cell with a 25-year-old male who was serving a sentence for assault as a technical parole violator. Id. at 7. Spiker believed that based on physical stature, similar criminal history, and the cellmate's lack of any history of sexual misconduct or institutional criminal history, this was "an appropriate housing decision." Id. Spiker

6

denies that Fuller-Woodson expressed any concerns to him orally or in writing related to his new housing assignment and denies that Fuller-Woodson told him was sexually harassed or sexually assaulted by this cellmate before the alleged February 20, 2024 assault. Id. at 7, 9. Fuller-Woodson reported the assault to Spiker on February 21, 2024, and the two were separated. Spiker initially advised Fuller-Woodson to return to his cell but "almost immediately" directed staff to place Fuller-Woodson in a multi-purpose room. Id. at 8. His cellmate was restrained and escorted to the Restricted Housing Unit and Fuller-Woodson was taken to an outside hospital for assessment and evaluation.

Upon Fuller-Woodson's return to Bravo Block, he was given a temporary Z-Code for a single cell. Spiker denies ever disclosing or discussing the details of the incident or investigation in the presence or earshot of other inmates. Id. at 9.

The parties' opposing Declarations, all set forth under penalty of perjury, present material issues of fact that require credibility assessment by a factfinder. Thus, it is recommended that the Court deny Fuller-Woodson's Motion for Summary Judgment as to his failure to protect claim.

**2. Retaliation**

To establish a claim for First Amendment retaliation, Fuller-Woodson must prove that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there exists "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). "Because motivation is almost never subject to proof by direct evidence, [a plaintiff] must rely on circumstantial evidence to prove a retaliatory motive. He can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a

pattern of antagonism coupled with timing that suggests a causal link." Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).

If Fuller-Woodson establishes a prima facie case, "prison officials may still prevail if they establish that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.' This is often referred to as the 'same decision defense.'" Id. (quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001))

In his Complaint, Fuller-Woodson alleges that Spiker retaliated against him for submitting grievances by placing him with cellmates who posed a danger and then failed to protect him from likely assault. ECF No. 6 at 12-15.[2] In support of his Motion for Summary Judgment, Fuller-Woodson identifies two grievances. The first grievance, No. 1073237, is dated February 6, 2024. Fuller-Woodson complains that while housed in Delta Block he spoke his unit manager and reported that he was being sexually harassed and assaulted by his cellmate, and that his compatibility complaints with Black and Muslim inmates were being ignored. ECF No. 43-2 at 1. The second grievance, No. 1074099, is dated February 12, 2024. Fuller-Woodson alleges that he suffered retaliation related to his initial housing assignment in Bravo Unit because his Unit Manager placed him in a cell with "the same inmate who allegedly threatened me in the past and issued and recorded sanction for." ECF No. 43-3. He also complains that his counselor refused to provide him the name of his Bravo Unit Manager. Id.

---

[2]    Fuller-Woodson also moves for summary judgment against Guyton for retaliation in violation of the First Amendment. ECF No. 43. However, in his Complaint, Fuller-Woodson asserts this retaliation claim only against Spiker. ECF No. 6 at 12-15. Because a party may not amend a Complaint through a summary judgment motion or brief, Fuller-Woodson's Motion for Summary Judgment on his First Amendment retaliation claim against Guyton is denied. See Jones v. Treece, 774 F. App'x 65, 67 (3d Cir. 2019) (quoting Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("[A] plaintiff generally 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'")).

Fuller-Woodson's Pretrial Statement identifies a third grievance, No. 1075524, which is attached to the Complaint. ECF No. 31 at 2; ECF No. 6 at 19. He asserts that this grievance concerns Spiker's alleged retaliation by "yelling to the whole pod that I filed a prea against my cellmate who attacked me, trying to put me in danger." Id. The copy provided to the Court is illegible but for purposes of the pending Motion for Summary Judgment only, the Court accepts Fuller-Woodson's description of the contents.

Defendants do not dispute that Fuller-Woodson engaged in constitutionally protected conduct or that the housing placement could be considered an adverse consequence. However, as to causation, Spiker asserts that while he was generally aware that Fuller-Woodson filed inmate grievances while at SCI – Greene, he was unaware of any specific grievance or the details of his grievances. ECF No. 55-2 at 10. Spiker also denies that he knew whether Fuller-Woodson filed a grievance that named him or concerned any actions taken by him with respect to Fuller-Woodson's housing assignments. Id. Spiker contends that based on the cellmate's profile, the same housing decision would have been made notwithstanding Fuller-Woodson's grievances. Spiker also denies that he ever announced or told other inmates that Fuller-Woodson filed a PREA complaint against his cellmate. ECF No. 61-2 at 9.

Upon review, the Court agrees that Fuller-Woodson fails to show that the first grievance was a substantial and motivating factor for Spiker's alleged retaliation. The grievance relates to Fuller-Woodson's housing assignment in Delta Block. Spiker served as the Unit Manager of Bravo Block, and there is no evidence that he was involved in the Delta Block assignment.

The second and third grievances present a closer question, and there are material issues of fact that preclude the entry of summary judgment in Fuller-Woodson's favor. These issues include whether Spiker knew that Fuller-Woodson grieved Spiker's housing placement in cell Bravo Block

BA-54, and thus whether he was motivated to retaliate by subsequently declining housing agreements, ignoring Fuller-Woodson's expressions of fear when he was placed with the cellmate who allegedly assaulted him, and disclosing his PREA complaint to other inmates. Under these circumstances, Fuller-Woodson's Motion for Summary Judgment as to his retaliation claim is denied.

### B.    Defendants' Motion for Summary Judgment

#### 1.    Failure to Respond to Motion for Summary Judgment

Fuller-Woodson has not responded to Defendants' Motion for Summary Judgment, or to their Concise Statement of Facts as required by Local Civil Rule 56.1. As explained in the Court's Summary Judgment Scheduling Order, "pursuant to Local Rule 56.E, alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." ECF No. 62.

That said, "[w]hen a summary judgment motion is uncontested, the non-responding party does not lose the summary judgment motion by default." Hitchens v. Cty. of Montgomery, 98 F. App'x 106, 110 (3d Cir. 2004); see also Nunez v. Heere, 438 F. Supp. 3d 321 (E.D. Pa. 2020). "[T]he failure of the nonmoving party to adequately respond to a motion for summary judgment does not relieve the movant of his or her burden of demonstrating entitlement to judgment as a matter of law." Moore v. PNC Fin. Servs. Grp., No. 13-1659, 2015 WL 5012947, at *4 (W.D. Pa. Aug. 21, 2015) (citing Carley v. Wheeled Coach, 991 F.2d 1117, 1126 (3d Cir.1993)). Due to Fuller-Woodson's failure to respond to Defendants' Motion for Summary Judgment, the Court must accept all the factual statements in Defendants' Concise Statement of Material Facts as

undisputed. Nonetheless, the court must still analyze the evidence of record in the light most favorable to Fuller-Woodson as the non-moving party and determine whether the evidence of record supports a finding that any Defendant is entitled to judgment as a matter of law. Id.

## 2.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion mandate is a "centerpiece" of the statute. See Perttu v. Richards, No. 23-1324, ___ U.S. ___, 145 S. Ct. 1793, 1798 (2025). Mandatory exhaustion "serves three important statutory goals: '(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.'" Talley v. Clark, 111 F.4th 255, 262 (3d Cir. 2024) (quoting Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004)).

"The PLRA requires proper exhaustion, which means complet[ing] the administrative review process in accordance with the applicable procedural rules," Talley, 111 F.4th at 262 (citation modified). "The only limit on § 1997e(a)'s mandate is that administrative remedies must be available to the prisoner as both a formal and practical matter." Id.

"But 'exhaustion is not required' when a prison administrator 'threaten[s] individual inmates so as to prevent their use of otherwise proper procedures.'" Perttu, 145 S. Ct. at 1798 (quoting Ross v. Blake, 578 U.S. 632, 644 (2016)). "Such interference with an inmate's pursuit of relief renders the administrative process unavailable, so § 1997e(a) poses no bar to suit. Id. (citation modified). See also Talley, 111 F.4th at 265 ("threats made by prison officials that 'inhibit an

11

inmate from utilizing an administrative process ... lift the exhaustion requirement' from the administrative process").

Defendants argue that they are entitled to summary judgment because undisputed record evidence establishes that Fuller-Woodson failed to appeal any of the grievances relevant to this case through all stages of appeals as required by Pennsylvania Department of Corrections Policy DC-ADM 804. ECF No. 59 at 3-9. Fuller-Woodson contends both in his Complaint and in a separately filed Declaration proffered under penalty of perjury that the grievance system became unavailable when Spiker threatened him. ECF No. 38; ECF No. 6 at 7. Fuller-Woodson asserts that Spiker approached him on February 22, 2024, and "threatened [him] with violence from staff, correctional officers and other inmates" if he continued to file grievances. Fuller-Woodson also alleges that Spiker "threatened to have [his] single cell status reversed and taken away if [he] went further with the grievance system." ECF No. 38.

The Court finds that notwithstanding Spiker's denials and Fuller-Woodson's failure to respond to Defendants' Concise Statement of Facts and pending motion, the record evidence, viewed in the light most favorable to Fuller-Woodson, precludes summary judgment for failure to exhaust administrative remedies because there are genuine disputes of material fact as to whether the grievance process was available to him. A reasonable finder of fact reviewing the evidence could conclude that Spiker's actions rendered the administrative process unavailable to him through "machination, misrepresentation, or intimidation." Rinaldi, 904 F.3d 257, 266-67 (3d Cir. 2018).

### 3.    Retaliation

Defendants move for summary judgment as to Fuller-Woodson's First Amendment retaliation claims against Spiker and Guyton - in the event the Court finds a claim asserted against

Guyton. Upon review, the Court finds that in his Complaint, Fuller-Woodson has not alleged a retaliation claim against Guyton. Thus, the Court does not reach this basis for relief.

As to Spiker, the Court has reviewed the conflicting evidence presented by both parties under penalty of perjury and concludes that material issues of fact preclude summary judgment. In Grievance No. 1074099, Fuller-Woodson complains that his "Unit Manager" was retaliating against him for challenging his housing assignment. As alleged under penalty of perjury in the Complaint, Spiker's retaliation included placing him in a cell with an inmate who Spiker knew made Fuller-Woodson feel unsafe. Fuller-Woodson also alleges under penalty of perjury that Spiker retaliated against him for filing grievances by "making a loud vocalized announcement from the bottom tier about my confidential complaint concerning sexual abuse so the whole housing unit could hear him to let them know I filed a sexual abuse claim against my former cellmate." ECF No. 6 at 15. While Spiker adamantly denies Fuller-Woodson's allegations under penalty of perjury and explains the reasons for the housing assignments, this evidence presents issues of credibility that precludes the entry of summary judgment in Spiker's favor.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Plaintiff Ronald Fuller-Woodson, ECF No. 43, is denied, and the Motion for Summary Judgment filed by Defendants Unit Manager Spiker and Unit Manager Guyton, ECF No. 58 is denied. An appropriate Order follows.

Dated: July 11, 2025                              BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing

       Ronald Fuller-Woodson
       NT0903
       SCI Phoenix
       1200 Mokychic Drive
       Collegeville, PA 19426